George S. BENNETT and Everett SHELTON *v.* STATE
of Arkansas

86-38                                        716 S.W.2d 755

Supreme Court of Arkansas
Opinion delivered September 29, 1986

48

*Thomas M. Carpenter*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. ■ ■ The Attorney General's office filed this suit seeking to obtain reimbursement for the State for maintaining appellants as inmates in the Department of Correction. The action was filed pursuant to the "State Prison Inmate Care and Custody Reimbursement Act." Ark. Stat. Ann. §§ 46-1701 to -1707 (Supp. 1985), which provides that when an inmate is found to have an "estate," the State may have a guardian of the estate appointed, and the estate may be liable to the State for the inmate's room, board, clothing, and medical expenses. "Estate" is defined as including payments from the Social Security Administration or any other pensions or retirement benefits. Appellant Bennett's estate consisted solely of funds he received from Social Security retirement benefits, and appellant Shelton's estate consisted of funds received from the Veterans' Administration disability benefits. Bennett objects to subjecting his estate to liability because the Social Security Act provides that "none of the moneys paid . . . shall be subject to . . . levy . . . or other legal process." 42 U.S.C.A. § 407. Similarly, Shelton contends the veterans' statute protects his estate from the State's action. It provides, "Payments . . . shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." 38 U.S.C.A. § 3101(a). The trial court found that the appellants' estates were subject to legal process in these cases, and, after using the formula provided in Ark. Stat. Ann. § 46-1704(b), ordered part of the estates to be paid to the State. We affirm.

■ Appellants contend that the State act is in conflict with the federal acts, and under the Supremacy Clause of the Constitution of the United States the federal acts must prevail. If the acts were in conflict, the federal acts would clearly prevail under the Supremacy Clause. *Philpott* v. *Essex County Welfare Board*, 409 U.S. 413 (1973). However, there is no conflict because the federal statutes contain an implied exception to the exemption from legal process when the State provides for the care and maintenance of a

beneficiary of social security or veterans' funds.

■ As set out in *Department of Health* v. *Davis*, 616 F.2d 828 (5th Cir. 1980), the purpose of social security benefits is to provide for the care and maintenance of the beneficiaries. The exemption of benefits from creditors' actions was enacted as part of the original social security legislation. Pub. L. No. 74-271, § 208, 49 Stat. 622, 625 (1935). This exemption evidences a clear legislative philosophy of precluding beneficiaries from diverting their social security benefits away from the statute's seminal goal of furnishing financial, medical, rehabilitation, or other services to needy individuals. 42 U.S.C.A. § 301. The benefits are paid for the purpose of assuring the beneficiaries' care and maintenance, and the State seeks to do nothing more than apply them to the cost of appellant Bennett's care. Neither the purpose of the benefits, nor the purpose of the exemption is accomplished by barring the State from recovering.

■ Likewise, veterans' payments "are intended primarily for the maintenance and support of the veteran." *Lawrence* v. *Shaw*, 300 U.S. 245, 250 (1937). Accordingly, the veterans' benefit exemption was held inapplicable where a state sought reimbursement for the expenses of continuous hospitalization of a mentally ill dependent of a veteran where the dependent's entire estate consisted of monthly pension payments received by a guardian. *In re Lewis' Estate*, 287 Mich. 179, 283 N.W. 21 (1938). In that case, the Supreme Court of Michigan, at page 24, wrote:

> The very purpose of a pension, such as in this case, is to provide support for the beneficiary and, in this proceeding for reimbursement, the state, under the statute, is asking no more than the pension was given to provide.

> We are not here concerned with actions by creditors seeking to turn the pension to satisfaction of their demands, but only with the question of reimbursement of the state for care and maintenance. Certainly the pension protective law does not intend the fund for the welfare of the beneficiary and then, under restrictions thereof, after receipt by the beneficiary, prevent employment thereof for care and support of the pensioner.

The reimbursement of the state for the care and maintenance of the beneficiaries of these two federal programs is entirely consistent with the thrust of the federal legislation.

The appellants contend that the case of *Philpott* v. *Essex County Welfare Board*, 409 U.S. 413 (1973), dictates reversal of the trial court. In *Philpott*, the Court rejected a state welfare agency's claim for reimbursement from a welfare recipient's disability benefits and noted the exemption was phrased in broad terms:

> On its face, the Social Security Act in § 407 bars the State of New Jersey from reaching the federal disability payments paid to Wilkes. The language is all-inclusive: "[N]one of the moneys paid or payable . . . under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process . . . ."

However, the Fifth Circuit Court of Appeals recognized that a fundamental distinction exists between cases such as the one at bar and *Philpott.* That court distinguished *Philpott* as follows:

> With regard to the social security statute, the Supreme Court in *Philpott* v. *Essex County Welfare Board*, 409 US 413; 93 S Ct 590; 34 L Ed 2d 608 (1973), precluded a state from recovering financial assistance rendered to a person claiming permanent and total disability. *Philpott* is different from this case, however, since there the welfare recipient was capable, at least in part, of providing for his own care, and the state was not acting *in loco parentis*, as it is here. The beneficiary in *Philpott* was merely receiving assistance in providing for himself. Glasscock, however, determined to be incompetent by the Veterans' Administration since February 21, 1952, has been in confinement until the present because he is apparently incapable of caring for himself to any degree. Glasscock *has had no needs during the period he has been in the Florida State Hospital that were not met by the state.* Accordingly, the state is seeking to have the guardian, who is responsible for overseeing her ward's care and maintenance, do what is required by Florida law; apply the benefits received by the ward for care and maintenance to reimburse Florida for undertaking his care and mainte-

nance. Thus, contrary to the guardian's argument, *Philpott* does not control the outcome of this case.

*Department of Health* v. *Davis*, 616 F.2d 828, 830 (5th Cir. 1980). (Emphasis added.)

The Court of Appeals of Michigan followed the Fifth Circuit and recognized the same distinction. *Department of Correction* v. *Brown*, 125 Mich. App. 620, 337 N.W.2d 23 (1983). Similarly, we do not find that *Philpott* controls the cases at bar because here the State provided the care and maintenance for the beneficiaries.

■ Appellants' final contention is that because we liberally construe exemptions, we must reverse the trial court. We find no merit in the argument. It is true that we do liberally construe exemptions from legal actions on pensions when creditors who have not provided for the care and maintenance of a beneficiary seek to turn the pension to the satisfaction of their demands. *Waggoner* v. *Games Sales Co.*, 288 Ark. 179, 702 S.W.2d 808 (1986). Such actions by creditors if allowed, would keep the imprudent beneficiary from caring and maintaining himself. Here, we are not concerned with an action which could prevent a beneficiary from caring and maintaining himself; instead, we are concerned only with the question of reimbursement of the State for care and maintenance.

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. In my opinion the Supremacy Clause of the United States Constitution requires this Court to declare Ark. Stat. Ann. § 46-1701 *et seq.* to be ineffective in attempting to make Veterans' Administration disability retirement benefit and Social Security retirement benefit funds subject to garnishment and/or execution. Were it not for the fact that the recipients of the disability payments, here in question, were imprisoned, I believe the decision of this Court might well have been different. I believe the case of *Philpott* v. *Essex County Welfare Board*, 409 U.S. 413 (1973) is controlling. I can see no implied exception to the exemption in *Philpott*. I agree with the majority that both Veterans' Administration disability benefits and Social Security retirement benefits are intended primarily for maintenance and support of the retiree.

Medical expenses and other personal obligations are also included in the recipients' anticipated costs of living. However, in enacting these laws the United States Congress unquestionably, by the clear and express language of the statutes, intended the recipients to be the owners of such funds and that no one, even judgment creditors, could take these funds away from the beneficiaries.

The Veterans' benefit exemption is set out in 38 U.S.C. § 3101 as follows:

> Payments of benefits due or to become due under any law administered by the Veterans' Administration . . . shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, *either before or after receipt by the beneficiary* . . . .

(Emphasis added.)

In the recent decision of *Waggoner* v. *Games Sales Co.*, 288 Ark. 179, 702 S.W.2d 808 (1986), this Court apparently recognized the Supremacy Clause when it declared Civil Service retirement benefits were not subject to a writ of garnishment on a judgment. The Civil Service Retirement Disability Fund exemption, 5 U.S.C.A. § 8346(a), uses about the same language as the Veterans' Administration disability benefit and Social Security benefit funds use to exempt those funds from the attachment process. In *Waggoner* we stated, "[w]e are of the opinion that the better rationale is to follow the clear language of the statute and to hold that the money which came from disability payments by the Civil Service Retirement System is exempt from garnishment by a judgment creditor under the provisions of 5 U.S.C.A. § 8346(a)." I see no reason to change the clear logic of that decision.

The majority opinion in the present case is precedent for allowing judgment creditors, who have furnished food, clothing, lodging, and other items of the costs of living to recipients of Veterans' benefits and Social Security benefits, to garnish such benefits. I find the majority opinion to be entirely inconsistent with the clear and unambiguous language of the federal statutes creating these exemptions in favor of the beneficiaries. Any change in the law should come from Congress.

54

I would reverse and dismiss.